UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **CERTAIN UNDERWRITERS AT LLOYDS, LONDON**     Plaintiff, <br> **v.** <br><br> **ROGER BORDEN d/b/a MOUNTAIN LAKE HOME BUILDERS,**     Defendant. | **Case No. 4:23-cv-1462-CLM** |

### MEMORANDUM OPINION

Certain Underwriters at Lloyds, London ("Lloyds") asks this court to declare that Lloyds had no duty to defend Roger Borden in a lawsuit that Borden won in state court. (Doc. 16). Borden moves to dismiss for lack of jurisdiction. (Doc. 18). As explained below, the court has jurisdiction and thus **DENIES** Borden's motion. But the court orders the parties to brief whether this court should abstain from exercising its jurisdiction so that the issue can instead be litigated in state court. *See Borden v. Certain Underwriters at Lloyd's London, et al.*, Case No. 11-cv-2023-900500 (Calhoun Cnty. Cir. Ct. 2023).

### BACKGROUND

**A. The Ramsey lawsuit**

This case stems from a disagreement about home construction. Kelley Ramsey (not a party here) hired Roger Borden to build her home for around $195,000. Ramsey claimed that Borden abandoned the job before completion, thus leaving her with a defective, incomplete home. So Ramsey sued Borden in state court. *See Ramsey v. Borden*, Case No. cv-2020-900037 (Calhoun Cnty. Cir. Ct. 2023) ("*Ramsey* lawsuit").

### B. Borden's defense

Lloyds insured Borden at the time of construction. Borden's policy required Lloyds to defend Borden in any "suit" that could result in Borden being "legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . caused by an 'occurrence'." (Doc. 16, p. 44). Citing this provision, Borden asked Lloyds to defend him in the *Ramsey* litigation. Lloyds declined because, in Lloyds' judgment, Ramsey's claims of faulty workmanship and abandonment did not constitute a covered "occurrence." So Borden defended the case without Lloyds and won a defense verdict. According to Lloyds' complaint, Borden incurred about $115,000 in defense costs. (Doc. 16, p. 5).

### C. Dual Lawsuits about Coverage

Both sides have filed lawsuits against each other to determine whether Lloyds must reimburse Borden's litigation costs.

1. *Federal Dec Action*: Lloyds filed first, asking this court to enter a declaratory judgment that it was not required to defend Borden in the *Ramsey* litigation. (Docs. 1, 16). Borden has moved the court to dismiss for lack of jurisdiction. (Doc. 18). After briefing, Borden also raised the notion—but did not file a formal motion or request—that the court should abstain from exercising jurisdiction (if it exists) so that the state courts could decide the issue as part of the lawsuit that Borden filed 11 days after Lloyds filed this case.

2. *State court litigation*: Just after Lloyds filed this case, Borden sued Lloyds and two other insurers (Hannover and Holloway Insurance), seeking compensatory and punitive damages for failing to defend him in the *Ramsey* litigation. *See Borden v. Certain Underwriters at Lloyd's London, et al.*, Case No. 11-cv-2023-900500 (Calhoun Cnty. Cir. Ct. 2023). The parties are in discovery in that case. *See* (Docs. 27-1, 29).

## STANDARD OF REVIEW

When a claim is challenged for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the party bringing the claim bears the burden of establishing proper subject matter jurisdiction. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). And "[i]f the plaintiff fails to shoulder that burden, the case must be dismissed." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016) (citing *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008)).

## DISCUSSION

### A. Subject matter jurisdiction

Borden argues that the court lacks subject matter jurisdiction for two reasons: (1) the amount in controversy does not exceed $75,000, thus precluding diversity jurisdiction, and (2) Lloyds seeks an advisory opinion, rather than presenting an actual case or controversy. The court addresses Borden's arguments in the order he presented them.

#### 1. Amount in controversy

The parties are completely diverse, so the only question is whether the value of this case exceeds $75,000. *See* 28 U.S.C. § 1332.

In a declaratory judgment action about an insurer's duty to defend, "the amount in controversy is determined by the value of the total cost of the defense[.]" *Four Season Trucking Inc. v. Grange Mut. Cas. Co.*, No. 23-12013, 2024 WL 1635692, at *2 (11th Cir. Apr. 16, 2024). In its complaint, Lloyds pleads that Borden's defense costs were "approximately $115,000." (Doc. 16, ¶23). And after Borden challenged the court's jurisdiction, Lloyds provided copies of Borden's invoices that exceed $100,000.[1] (Doc. 27-1, pp. 17-75).

---

[1] Because Borden moved to dismiss for lack of subject matter jurisdiction by mounting a factual attack on the complaint (i.e., considering settlement offers outside the pleadings), the court can consider matters outside the pleadings when ruling on the motion. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003); *Penn. Nat. Mut. Cas. Ins. v. Roberts Bros.*, 550 F. Supp.

Based on Lloyds' pleading and evidence, Borden *could* recover more than $75,000 from Lloyds if the court declares that Lloyds had a duty to defend. That's enough to satisfy the amount in controversy requirement, and usually the inquiry would stop here.

But Borden points to a different number: The amount of compensatory damages Borden seeks from Lloyds in his ongoing state case against three insurance companies—*i.e.*, Lloyds, Hannover, and Holloway Insurance. Borden says that he does not seek more than $75,000 from Lloyds in the state case, and he offered to settle Lloyds' portion of the damages for $74,999 (Doc. 18, p. 4). Lloyds did not accept the $74,999 offer and instead filed this suit.

The court finds that Borden's splitting of damages among parties during negotiations does not affect federal jurisdiction. Again, "the amount in controversy is determined by **the value of the total cost** of the defense[.]" *Four Season Trucking*, 2024 WL 1635692, at *2 (emphasis added). The value of the total cost here exceeds $75,000. Plus, it's possible that Borden could succeed *only* against Lloyds in the state court case, or Borden could choose to drop the other insurers as defendants and seek to recover *only* from Lloyds (perhaps forcing Lloyds to seek indemnity from the others). In any case, the value of the case to Lloyds could exceed $75,000, and that's all that matters here.

### 2. Case or Advisory opinion

Next, Borden argues that Lloyds seeks an advisory opinion, rather than resolution of a case or controversy.

1. *The law*: Article III limits federal court jurisdiction to the consideration of "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. "Echoing the 'case or controversy' requirement of Article III, the Declaratory Judgment Act 'provides that a declaratory judgment may only be issued in the case of an actual controversy.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (citations omitted). "In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a

---

2d 1295, 1304 (S.D. Ala. 2008) (citing *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063-64 (Ala. 2003)).

plaintiff is seeking declaratory relief . . . the plaintiff must allege facts from which it appears that there is a 'substantial likelihood that he will suffer injury in the future.'" *Id.* (citing *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)). In the insurance coverage context, actions for a declaratory judgment may be justiciable where there has been "at least a threat of a claim or lawsuit." *Progressive Mountain Ins. v. Middlebrooks*, 805 F. App'x 731, 734 (11th Cir. 2020) (citing *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 415-16 (11th Cir. 1995)); *see also Am. Ins. v. Evercare Co.*, 430 F. App'x 795, 798-99 (11th Cir. 2011) (finding an active controversy where an insurance company insurer denied coverage and the insured demanded it, despite that the insured had not followed up its demand with a lawsuit).

2. *Application*: Borden has not only threatened a claim or lawsuit over Lloyds' refusal to defend, *id.*, he demanded payment (doc. 20, p. 3), then sued Lloyds in state court when Lloyds refused. So Lloyds has shown that it could suffer an injury if a court finds that it had a duty to defend Borden in the *Ramsey* litigation.

In short, Borden's point that the state court could decide the same issue doesn't strip this court of jurisdiction; it proves Lloyds' point that there is an active controversy over its denial of coverage. Borden's better point is that this court doesn't *have* to exercise its jurisdiction given the state court litigation.

**B. Abstention**

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Ameritas Variable Life Ins. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995)). The Supreme Court has found that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* (quoting *Brillhart v. Excess Ins. of Am.*, 316 U.S. 491, 495 (1942)).

After briefing closed on Borden's motion to dismiss, Lloyds filed a status report about the state court litigation. *See* (Doc. 27). In his response to that report, Borden opined (but did not formally move) that this federal court abstain from exercising its jurisdiction so that the denial of coverage issue could play out in the state court litigation.

Borden *may* be right that abstention is preferable here. But the parties have not fully briefed the issue. So the court orders the parties to simultaneously file briefs about abstention, limited to **10 pages** (double-spaced, 14-point font), by **September 11, 2024.** Among other things, the briefs should address these factors announced by the Eleventh Circuit:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
> (6) whether there is an alternative remedy that is better or more effective;
>
> (7) whether the underlying factual issues are important to an informed resolution of the case;
>
> (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy,

> or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas Variable Life*, 411 F.3d at 1330-31. Unless the court orders otherwise after reviewing the briefs, the court will not accept responses or reply briefs.

## CONCLUSION

For the reasons stated within, the court **DENIES** Borden's motion to dismiss Certain Underwriters' amended complaint for lack of jurisdiction. (Doc. 18).

The parties have until on or before **September 11, 2024,** to file briefs on whether the court should abstain from exercising jurisdiction because of the ongoing state court litigation.

**DONE** and **ORDERED** on September 3, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE